**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

JAMES DOBY,

                Plaintiff,

vs.                                                  Case No. 3:04-cv-1044-J-32MMH

RONALD BERRY, etc., et al.,

                Defendants.

_____

**ORDER**[1]

This case is before the Court on pending pretrial motions. Plaintiff James Doby, a Florida State Prison inmate, is suing the Secretary of the Department of Corrections, James McDonough, for injunctive relief, and certain supervisors and guards at Florida State Prison for damages arising out of the November 27, 2002 use of chemical agents on Doby. Only Secretary McDonough has moved for summary judgment.

**I.    Defendant McDonough's motion for summary judgment**

Defendant McDonough is being sued in his official capacity for injunctive relief only and has moved for summary judgment arguing that plaintiff Doby has failed to establish a link between any Eighth Amendment violations Doby allegedly suffered while an inmate at Florida State Prison and any Department of Corrections policy, practice or custom (or lack thereof) concerning the use of chemical agents. See Doc. 75. In support of his motion, McDonough has filed deposition transcripts of defendant Captain Dean Ellis (Doc. 75 attach.

_____

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

2-5) and defendant Sergeant Kevin Snow (Doc. 75 attach. 6-8).[2]  Plaintiff claims that the allegations of the complaint and evidence of record create disputed material facts which prevent summary judgment.  See Doc. 82.  In support, plaintiff has filed various inmate affidavits (Doc. 82 attach. 1), plaintiff James Doby's deposition transcript (Doc. 82, attach. 2) and deposition transcripts of five other inmates (Doc. 82, attach. 3-7).

When ruling on motions for summary judgment, the Court must "view all evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).  "Issues of credibility and the weight to be afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003).  Summary judgment should only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1279-80 (11th Cir. 2004) (citing Fed. R. Civ. P. Rule 56(c)).  In other words, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial" and summary judgment is due to be granted.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.s. 574, 587 (1986) (citation omitted).  In deciding a motion for summary judgment by a defendant, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;

---

[2]McDonough also inexplicably filed discovery evidence from an apparently unrelated case.  See attachment 1 to Doc. 75.

2

there must be evidence on which the jury could reasonably find for the plaintiff.'" Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)). "'If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" Id. (quoting Anderson, 477 U.S. at 249-50) (emphasis in original).

A federal court's power to grant injunctive relief is dependent on the presence of a constitutional violation and the relief granted must be designed to cure the violation. LaMarca v. Turner, 995 F.2d 1526, 1542-43 (11th Cir. 1993). Thus, "federal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate the Constitution or does not flow from such a violation." Milliken v. Bradley, 433 U.S. 267, 282 (1977). See also, Al-Alamin v. Gramley, 926 F.2d 680, 685 (7th Cir. 1991) (discussing principles governing federal court authority to grant injunctive relief).

In his complaint, Doby alleges that on November 27, 2002, while an inmate at Florida State Prison, he was repeatedly sprayed with chemical agents by Sergeant Kevin Snow after Doby, who was not clothed at the time, verbally complained to guards. Doc. 1 at ¶ 17-23. Doby alleges that he suffers from mental illness and that Snow directed the spray toward Doby's genitals and buttocks area for the purpose of causing Doby pain and suffering and that Doby in fact suffered severe burns and blistering over his genitals, resulting in permanent chemical burn scars and continued pain and suffering. Doc. 1 at ¶¶ 23, 25. Doby alleges that he was not presenting a danger to himself or others at the time and that no legitimate penological purpose was served by Snow's actions. Doc. 1 at ¶¶ 22, 26. Doby alleges that the November 27, 2002 incident typifies the misuse of chemical agents within

3

the Department of Corrections and that indeed it is the "policy, procedure and custom of the Department of Corrections to use chemical agents and claim its use was for purposes of maintaining order on an institutional basis" when in reality, the purpose is punitive. Doc. 1 at ¶ 28.

Doby alleges that the Secretary of the Department of Corrections "has acted with deliberate indifference to the substantial likelihood that Florida prisoners will be subjected to chemical agents maliciously and sadistically for the very purpose of causing harm and not in a good faith effort to restore or maintain discipline or for any other legitimate penological reason" and that the repeated malicious and sadistic use of chemical agents "violates the right of the Plaintiff to be free from cruel and unusual punishment as guaranteed by the eight[h] amendment, made applicable to the State by the fourteenth amendment of the Constitution of the United States." Doc. 1 at ¶¶ 32-33. Plaintiff alleges that the "unjustified or excessive use of chemical agents is so pervasive that there is an extremely high likelihood that the Plaintiff would be subject to this unconstitutional practice in the future." Doc. 1 at ¶ 34.

Plaintiff therefore seeks an Order from the Court "declar[ing] that unjustified and excessive use of chemical agents . . . violates the eighth and fourteenth amendment of the Constitution of the United States;" requiring the Secretary to "submit a plan" to "prevent chemical agents from being used maliciously and sadistically," specifically addressing the improper use of chemical agents "on areas of the body which would pose unreasonable risk of severe pain and anguish and permanent injury" particularly in the case of those inmates "already suffering from mental illness issues" and to require "all non-spontaneous use of

chemical agents [to] be videotape[d], and provide "comprehensive training in the use of techniques to calm inmates who are suffering from mental health impairment without the use of force." Doc. 1, "Wherefore" clause to Count I at ¶¶ a-e. Finally, plaintiff seeks an injunction which requires the Secretary to "properly supervise, review and investigate the actions of [his] subordinates, when the subordinates use chemical agents in a non-spontaneous setting." Id. at f.

In responding to McDonough's motion for summary judgment, plaintiff does not argue that Florida's Administrative Code regulating the use of chemical agents within the Department of Corrections is facially unconstitutional but instead contends that, rather than abiding by these procedures (which are codified at Fla. Admin. Code Ann., Rule 33-602.210), the Department has a "custom or de facto policy" of permitting corrections officers to ignore these policies, resulting in Eighth Amendment violations. See Doc. 82 at 6. Plaintiff specifically argues that corrections officers use chemical agents for purposes of punishment in contravention of Rule 33-602.210(16)(e) and that corrections officers fail to follow the procedures regarding pre-use counseling (Rule 33-602.210(16)(m)) and the particular requirements for the actual administration of the chemical agents (requiring no more than three one-second bursts of gas up to three times at five minute intervals) (Rule 33-602.210(16)(m)(3)(b)-(d)).[3]

---

[3] To the extent that plaintiff's complaint does (albeit in a scatter-shot manner) make other assertions regarding deficiencies in the Administrative Code policies, plaintiff has put forth no record evidence to support those allegations or to demonstrate how they create violations of a constitutional dimension. The Court has therefore limited its consideration here to plaintiff's arguments regarding the Secretary's de facto policies which are allegedly in derogation of the Administrative Code, as set forth in plaintiff's response to McDonough's

Although Doby's complaint only outlines the November 27, 2002 incident, in his deposition he claims to have been sprayed on approximately five occasions at Florida State Prison between 2002 and 2005 (and once at another state correctional facility). See Doc. 82, Ex. A (Doby depo.) at Tr. 25-27, 42-45. Plaintiff has additionally supplied affidavits and deposition testimony from other inmates who have either been gassed with chemicals agents or who have witnessed other inmates being gassed. See Doc. 82, Attach. 1, Ex. B-F. Only one of these inmates (Thomas Hernandez) claims to have observed the November 27, 2002 spraying of Doby.

Here, the Secretary is not arguing that the misuse of chemical agents could never result in a violation of the Eighth Amendment but, rather, that plaintiff has not created an issue of fact as to whether a de facto policy exists that permits or encourages such violations.[4] To create the required causal connection between the Secretary's actions or inactions and the alleged constitutional violation, plaintiff must demonstrate that either "1) a history of widespread abuse put[ ] [the Secretary] on notice of the need to correct the alleged deprivation, and he . . . fail[ed] to do so; 2) [the Secretary's] custom or policy result[ed] in deliberate indifference to constitutional rights; or 3) facts support an inference that the [Secretary] directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." Valdes v. Crosby, 450 F.3d 1231, 1237 (11th Cir. 2006). Plaintiff argues that, like the facts in Valdes, here too "[t]he evidence

---

motion.

[4]Plaintiff has not argued that the November 27, 2002 incident standing alone would be sufficient to create supervisory liability on the part of the Secretary.

in this case is sufficient to allow a reasonable jury to consider whether the Department of Corrections had a custom or de facto policy which resulted in deliberate indifference to constitutional violations and failed to take action to correct the ongoing abuse." Doc. 82 at 6.

Unlike in Valdes, however, here the evidence is insufficient as a matter of law. First, the reports by plaintiff's affiants of alleged misuse of chemical agents, while impressive in the sheer volume of incidents allegedly observed (in one case up to 800 observations by one inmate), are missing any of the detail that would render such evidence sufficient to create a triable issue. See, e.g., Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000) ("To the extent that affidavits submitted in opposition to a motion for summary judgment merely reiterate allegations made in the complaint, without providing specific factual information made on the basis of personal knowledge, they are insufficient."). This is in contrast to the more detailed reports contained in the deposition testimony of some of the inmates which demonstrates that inmates do not necessarily have a complete view into other inmates' cells nor do they always have the ability to hear the content of conversations going on between guards and other inmates.

Even assuming that the inmate testimony created an issue of fact as to whether the corrections officers had violated the Department of Corrections' policy regarding the administration of chemical agents, the mere failure of any corrections officers to follow those procedures does not necessarily result in a violation of constitutional magnitude. To constitute an Eighth Amendment violation in these circumstances, there must be evidence of "the unnecessary and wanton infliction of pain." Hope v. Pelzer, 536 U.S. 730, 737 (2002)

7

(quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). While the Secretary is not arguing that a constitutional violation could not have occurred if the November 27, 2002 incident took place exactly as plaintiff alleges (though the Secretary has not conceded this either), none of the other inmates, either in deposition or affidavit, reported witnessing incidents nearly as egregious in their circumstances as that alleged by plaintiff. Plaintiff has simply offered no support for the proposition that every use of chemical agents that fails to follow procedures results in a constitutional violation and without an underlying constitutional violation, no injunctive relief may be granted. Milliken, 433 U.S. at 282.

Even assuming the existence of violations of a constitutional magnitude based on the misuse of chemical agents, there is no evidence that the Secretary has established a de facto custom or policy that resulted in such violations. Likewise, as noted above, the record as it stands fails to demonstrate a "history of widespread abuse" which resulted in deliberate indifference to constitutional rights and there is no evidence of record from which the Court could determine that the Secretary directed subordinates (such as the warden or other subordinates at Florida State Prison) to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so. See Valdes, 450 F.3d at 1237.

The Court finds that plaintiff has failed to demonstrate that a triable issue of fact exists as to the supervisory liability of Secretary McDonough such that the Court could entertain granting declaratory or injunctive relief. Secretary McDonough is therefore due to be granted summary judgment.[5, 6]

---

[5]At the final pretrial conference, plaintiff seemed to be narrowing his position, stating that he was only seeking injunctive relief to the extent that he sought to protect those witnesses

**II.      Defendants' motion in limine to exclude inmate testimony**

Defendants jointly move to exclude in its entirety the testimony offered by inmates John Chestnut, Jason Higgs, Tavares Knight, Joseph Gordon, and Jimmy Caruthers as well as the testimony of Thomas Hernandez except as it relates to Hernandez's direct observations of the events of November 27, 2002.  Doc. 90.  Defendants argue that the testimony of these other inmates is irrelevant as to the liability of the defendants sued individually for their alleged roles in those events.  The Court essentially agrees with that proposition.

However, defendants Ronald Berry,[7] Dean Ellis and Arlie Dobbs are sued in their *supervisory* capacities.[8]  Plaintiff's complaint contains no allegation that Berry or Ellis had any direct role in the November 27, 2002 incident and the deposition testimony of record does not support such a finding.  Therefore, at least as to these two officers, liability can only be established if plaintiff demonstrates a "causal connection" between their actions or inactions and the alleged constitutional violation.  Valdes 450 F.3d at 1237.  As explained

---

offering testimony in this case.  Plaintiff has made no showing that those inmates are at any particular risk such that entry of an injunction would be appropriate for this purpose.

[6]The determination that plaintiff's request for injunctive relief is due to be denied is based solely on the record in this case and is not intended to serve as precedent or indicate that injunctive relief concerning these issues might not be available on a different record.

[7]Mr. Berry is also identified in various filings as Mr. "Barry."

[8]Dobbs is sued individually both for her (or his, depending on the document) direct role in the November 27, 2002 events as well as in her capacity as Snow's supervisor.  See Complaint (Doc. 1) at ¶ 14.  It is not clear from the complaint whether Dobbs is alleged to have been present when chemical agents were sprayed in Doby's cell on November 27, 2002.  If taken, Dobbs' deposition is not of record.

above, such a causal connection can be shown when a history of widespread abuse puts the responsible supervisor on notice and he fails to act, when the supervisor's custom or policy results in deliberate indifference, or when facts support an inference that the supervisor directed subordinates to act unlawfully or knew they would so do and failed to act. Id.

Here, the record is unclear as to what the role was of the defendants sued individually in their supervisory capacities so the Court does not know the extent (if any) to which they were "the responsible supervisors" or whether any of them had a "custom or policy" or were in a position to have directed subordinates to act unlawfully or had knowledge that subordinates would do so. None of these defendants has moved for summary judgment and this matter is now before the Court on an in limine motion only. In these circumstances, the Court finds the motion is due to be denied without prejudice to renewal at trial.[9]

### III.    Doby's motion in limine to exclude Atherton testimony

Doby moves in limine to exclude the testimony of Eugene E. Atherton pursuant to Fed. R. Evid. 702 and the standard set forth in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). (Doc. 88). The Court has little doubt that Mr. Atherton is a qualified expert on matters of prison management whose experience and knowledge would render him competent to offer general testimony likely helpful to the jury about certain matters in this case, including, for example, whether the Department of Corrections' use of force policies are consistent with accepted standards (see Doc. 88, Attach. 1 at page 12, second

---

[9]Given this ruling, the Court determined plaintiff would not be prejudiced if this decision were issued without waiting for plaintiff to file the permitted sur-reply. See Order, Doc. 97.

unnumbered paragraph) or whether it is usual that a large proportion of inmates in close confinement suffer from mental instability (see Doc. 88, Attach. 1 at page 12, fourth unnumbered paragraph).  However, Atherton's views on the propriety of the actions taken against Doby, whether guards were acting in conformity with policies, whether the use of chemical agents was punitive, and whether Doby's suspicion as to why chemical agents were used is supported by the evidence, may well go beyond his expertise and/or are within the jury's province to decide based on the jury's credibility determinations of the fact witnesses called in the case.  Plaintiff's motion is therefore granted to the extent that Mr. Atherton may not offer testimony regarding the November 27, 2002 use of chemical agents on plaintiff, including any views as to which witnesses to these events are to be believed;[10] Mr. Atherton may, however, assuming an adequate predicate is established, offer general testimony regarding relevant prison management techniques and practices.  He may also be asked appropriate hypotheticals based on the evidence adduced at trial.

Accordingly, it is hereby

**ORDERED**:

1. Defendant McDonough's Motion for Summary Judgment (Doc. 75) is **GRANTED**.  The Clerk shall withhold entry of judgment in favor of defendant James McDonough, in his official capacity as Secretary, Florida Department of Corrections, and against plaintiff James Doby on Count I of plaintiff's complaint until the conclusion of the

---

[10] As with any pretrial evidentiary decision, this ruling is subject to being revisited depending on the events of trial, such as if plaintiff were to "open the door" to such testimony.

case.

    2.    Defendants' Motion to Exclude Inmate Testimony (Doc. 90) is **DENIED** without prejudice to renewal at trial.

    3.    Plaintiff's Motion in Limine to Exclude Testimony of Mr. Atherton (Doc. 88) is **GRANTED** in part and **DENIED** in part as described above.

**DONE AND ORDERED** at Jacksonville, Florida this 6th day of December, 2006.

TIMOTHY J. CORRIGAN
United States District Judge

s.
Copies:
counsel of record